## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TEQUILA CENTINELA, S.A. de C.V., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-02201 (RCL) |
| | ) | |
| BACARDI & COMPANY LIMITED, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the defendant's Partial Motion [17] to Dismiss.

Upon consideration of the defendant's motion, the plaintiff's opposition [19] thereto, the

defendant's reply [22] brief, the applicable law, and the entire record herein, the Court concludes

that the defendants' motion will be DENIED in part and GRANTED in part. The Court agrees

with the plaintiff's contention that this Court has the power to review the rulings of the

Trademark Trial and Appeal Board ("TTAB") with regard to all matters except that of the

TTAB's denial of Centinela's motion for summary judgment on the issue of confusion and no

dilution. The Court's reasoning is set forth below.

## BACKGROUND

On August 21, 2000, the plaintiff, Tequila Centinela, S.A. de C.V., (Centinela) filed

Application Serial No. 76/112,825 to register with the United States Patent and Trademark

Office the "CABRITO and (Goat)" design for alcoholic beverages, excluding beer, but including tequila. (Def. Mot. Dismiss 2; Pl.'s Opp'n Mot. 2.)  On May 9, 2002, registration was opposed by Tequila Cazadores S.A. de C.V. (Cazadores) on the grounds that Centinela's "CABRITO and (Goat)" design so resembled its previously used and registered mark "CAZADORES" (U.S. Reg. No. 1,863,882)[1] for "'alcoholic beverages, namely, tequila' and its common law mark for tequila, as to likely cause confusion, or to cause mistake[,] or to deceive, or to dilute the distinctive quality of Cazadores' 'CAZADORES' marks." (Def. Mot. Dismiss 2.)  In May of 2002, Bacardi became the successor-in-interest to Cazadores' rights in "CAZADORES." (*Id.*)  On June 24, 2002, Centinela answered Cazadores' notice of opposition.  (Pl.'s Opp'n Mot. 2.)

On August 30, 2002, prior to any asserted claim of fraud, Centinela moved before the TTAB to amend their application, revising the dates of first use and narrowing the identification of goods.  (*Id.*)  Later, on September 4, 2002, Bacardi moved before the TTAB to substitute itself as the party-plaintiff in the Opposition, to amend the notice of opposition to assert a claim that the "CABRITO and (Goat)" application was fraudulently filed, and for summary judgment based upon the amended claim of fraud.  (Def. Mot. Dismiss 2; Pl.'s Opp'n Mot. 2.)  Subsequently, on November 1, 2002, Centinela moved before the TTAB for summary judgment on the grounds that there were no likelihood of confusion and no dilution as between Centinela's "CABRITO and (Goat)" design and the "CAZADORES" design.  (Def. Mot. Dismiss 3; Pl.'s Opp'n Mot. 3.)

On March 5, 2003, the TTAB denied Bacardi's motion to substitute itself as a party-plaintiff on the grounds that Bacardi had failed to submit sufficient documentary evidence in support of its assertion that it was the assignee of the marks.  (Def. Mot. Dismiss 3.)  Thus, both

---

[1] (Def. Mot. to Dismiss 2.)

Bacardi's motion to amend the notice of opposition and motion for summary judgment were given no consideration, as they were filed by a non-party entity to the proceedings.  (Pl.'s Opp'n Mot. 3.)  In ruling on the previous motions made by Centinela, the TTAB deferred ruling on Centinela's previous motion to amend the "CABRITO and (Goat)" application until there was a final disposition of the opposition to register the mark or until the proceeding was decided on summary judgment.  (*Id.*)  The TTAB also denied Centinela's motion for summary judgment on the grounds that there was no likelihood of confusion and no dilution between the parties' marks. (*Id.*)

Bacardi, on April 15, 2003, renewed its motions to substitute itself as a party-plaintiff, to amend its notice of opposition, and for summary judgment on the issue of fraud.  (*Id.*)  Bacardi also provided supplemental documentation to the TTAB to establish its ownership of the marks cited in the Opposition.  (*Id.*)  In its Decision and Order of February 24, 2004, the TTAB allowed Bacardi to join as a party-plaintiff with Cazadores, but deferred decision on Bacardi's standing, giving Bacardi sixty days to supply sufficient documentation to prove Bacardi's chain of title to the "CAZADORES" marks.  (Def. Mot. Dismiss 3; Pl.'s Opp'n Mot. 4.)  The TTAB also granted Bacardi's motion for summary judgment on the grounds that the "CABRITO and (Goat)" application was fraudulently filed.  (*Id.*)   The TTAB found fraud in Centinela's application because Centinela claimed to be displaying the design on more goods in its use-based application than it actually was displaying at the time of filing the application.  (Pl.'s Opp'n to Mot. 4.)  The TTAB further stated that Centinela's attempt to narrow the identification of goods in the "CABRITO and (Goat)" application did not cure the original fraudulent filing.  (*Id.*)

On October 19, 2004, the TTAB issued a Decision and Order granting Bacardi's motion for summary judgment on the issue of its standing.  (Pl.'s Opp'n Mot. 4.)  In that Decision and Order, the TTAB entered judgment against Centinela on the ground of fraud, sustained the Opposition, and refused registration of the "CABRITO and (Goat)" design mark.  (*Id.*) Subsequently, on October 20, 2004, pursuant to Trademark Act Section 21(b)(1), 15 U.S.C. §1071(b)(1), Centinela filed a civil action in this Court seeking review and reversal of the March 5, 2003; February 24, 2004; and October 19, 2004, Decisions and Orders of the TTAB, to the extent that they were adverse to Centinela.  (*Id.* at 5.)

Bacardi's present motion to dismiss is based upon the belief that this Court lacks the requisite subject matter jurisdiction to review all of the Decisions and Orders entered by the TTAB.  (Def. Mot. Dismiss 3.)  Bacardi does not contest that the questions of whether the TTAB correctly granted summary judgment on the issue of fraud or correctly granted Bacardi's motion to amend the notice of opposition to assert a claim of fraud is properly before this Court.  (Def. Mot. Dismiss 5.)  Rather, Bacardi's claim is that this Court lacks the requisite subject matter jurisdiction to review the TTAB's: Denial of Centinela's motion for summary judgment that there was no likelihood of confusion; denial of Centinela's motion to amend its application to narrow the identification of goods; granting of Bacardi's motion to join as a party-plaintiff; and finding that Bacardi had standing to bring and maintain the Opposition. (*Id.* at 5-8.)  The basis for the Bacardi's claim is that pursuant to the jurisdiction granting statute, 15 U.S.C. §1071(b)(1), this Court may only review final decisions of the TTAB and not those which are interlocutory in nature.  (*Id.* at 4-5.)

**DISCUSSION**

15 U.S.C. §1071(b)(1) permits any party dissatisfied with a decision of the TTAB, as an alternative to an appeal to the United States Court of Appeals for the Federal Circuit, to have remedy by a civil action.  Thus, this Court sits as an appellate court to the TTAB and acting as such, applies a standard of review that is a hybrid of deferential treatment and *de novo* scrutiny. *Mitchell Cosmetics SARL v. Pramil S.R.L. (Esapharma)*, 2005 WL 3273371, *2 (D.D.C.) (citing *See Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 146 F.3d 983, 989-90 (D.C. Cir. 1998)). Deferential treatment is granted to the TTAB's finding of facts, giving them great weight and not upsetting them unless new evidence is introduced which carries thorough conviction.  *Id.*  (citing *Material Supply Int'l, Inc.*, 146 F.3d at 990 (quoting 3 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 21:21, at 21-26 (4th ed. 1997)).  However "because 'the district court is just as able as the TTAB to determine an issue of law,' review of legal questions is *de novo*." *Id.*

In its October 19, 2004, Decision and Order, the TTAB entered a final, dispositive, and appealable decision in favor of Bacardi.  In relevant part, 15 U.S.C. §1071(b)(1) allows for any person authorized by 15 U.S.C. §1071(a) who "is dissatisfied with the decision of the Director or Trademark Trial and Appeals Board" to have remedy by a civil action if commenced within such time "after such decision."  The term "decision," when used in the context of 15 U.S.C. §1071, has been interpreted to mean "a dispositive decision in which a right has been adjudicated." *Wagner Shokai, Inc. V. Kabushiki Kaisha Wako*, 699 F.2d 1390, 1391 (Fed. Cir. 1983) (citing *United States Treasury v. Synthetic Plastics Co.*, 341 F.2d 157, 157 (CCPA 1965)).  A dispositive, final decision, is one which ends the litigation on the merits and leaves nothing for

5

the court to do but execute the judgment. *Caitlin v. United States*, 324 U.S. 229, 233 (1945).  In

the TTAB's October 19, 2004, Decision and Order, the TTAB effectively ended the case by

stating: "Judgment is hereby entered against applicant on the ground of fraud, the opposition is

sustained, and registration to applicant is refused." (Pl.'s Opp'n Mot. Exhibit D.)  Furthermore,

Bacardi admits that "the grant of summary judgment in Opposer's favor on the fraud issue is a

final, dispositive and appealable decision of the Board which is properly before this Court for

review." (Def. Mot. Dismiss 5.)  Having found there to be a final decision of the TTAB properly

before this Court, we must now shift our focus to the interlocutory decisions of the TTAB and

determine this Courts ability to review such decisions.

### A. The "Merger Doctrine" v. "Logically Related" Test

With exception of the TTAB's denial of summary judgment, this Court may review all of

the decisions of the TTAB which were interlocutory when first issued because the interlocutory

decisions ultimately merged with the final judgment, becoming reviewable.  In their motion to

dismiss and subsequent reply memorandum in support of their motion to dismiss, Bacardi argued

that interlocutory decisions of the TTAB were only reviewable if "logically related" to the

appealable final decision. *See Palisades Pageants, Inc. v. Miss America Pageant*, 442 F.2d

1385, 1388, 169 U.S.P.Q. 790 (CCPA 1971), *cert. denied.* 404 U.S. 938 (1971).  Centinela, in

their opposition to the motion to dismiss, claimed that when the TTAB entered its final judgment

in the proceeding, its interlocutory rulings merged with the final judgment, making the final

judgment and the interlocutory orders reviewable on appeal.  This Court agrees with Centinela,

that subject to the limitations of what is reviewable on appeal,[2] rulings which were interlocutory

---

[2] Discussed in part B of this opinion.

upon being issued, merge with the final judgment and are reviewable on appeal.   *See I.A.M. National Pension Fund Benefit Plan A v. Cooper Indus., Inc.*, 789 F.2d 21, 24 (D.D.C. 1986) (citing *Aaro, Inc. v. Daewoo International (America) Corp.*, 755 F.2d 1398, 1400 (11th Cir. 1985)); *see also Franklin v. District of Columbia*, 163 F.3d 625, 629 (D.C. Cir. 1998) (explaining that a party is entitled to a single appeal, to be deferred until the end of the case)).   In explaining why Cooper Industries failed to meet an exception that allowed for the appeal of an interlocutory order,[3] the Court adopted an 11th Circuit ruling, making interlocutory orders which were not immediately reviewable, upon final judgment, open for review.   *I.A.M.*, 789 F.2d at 24-25 (citing *Aaro*, 755 F.2d at 1400).

This Court finds that upon granting summary judgment, the TTAB issued a final, dispositive and appealable decision.[4]   This Court also finds that the TTAB's decisions regarding Centinala's motion to amend, granting Bacardi's motion to join as a party-plaintiff, and finding that Bacardi had standing to bring and maintain the Opposition were all interlocutory when issued.[5]   Thus with the granting of summary judgment by the TTAB, the aforementioned interlocutory decisions became merged with the final decision granting summary judgment and are properly before this Court.   *See Id.*

---

[3] One exception to the rule of having to wait until a final decision is handed down to appeal an interlocutory order is when the order grants or has the practical effect of granting an injunction. *I.A.M.*, 789 F.2d at 23.

[4] Bacardi's briefs support this finding.  (*See* Def. Mot. Dismiss 5) (stating: "The grant of summary judgment in Opposer's favor on the fraud issue is a final, dispositive and appealable decision of the Board which is properly before this Court for review.")

[5] Bacardi's briefs also support this finding.  (See Def. Motion Dismiss 6) (stating that: "The denials of motions to amend has always been considered interlocutory and non-appealable..."); (See Def. Motion to Dismiss 7) (stating: "Thus, the Board's decisions on the interlocutory issues of whether or not Bacardi was properly a party-plaintiff or had standing ... .")

The Court is not persuaded that the "logically related" test championed by Bacardi applies in this case. This court finds no solid reason to depart from the binding precedent of the D.C. Circuit in favor of the persuasive precedent of the Federal Circuit Court of Appeals.[6] Given this Court's embracing of the merger doctrine, we are not compelled to apply the "logically related" test. *See I.A.M.*, 789 F.2d at 24 (citing *Aaro*, 755 F.2d at 1400). Furthermore, the "logically related" test provided in *Palisades* is nebulous at best. *See* 442 F.2d at 1388. *Palisades* sets forth no judicial guide posts for which this Court should follow in making its decision.[7] *See Id.* To follow such a nebulous test in the face of this Court's long standing support of the merger doctrine would be a poor decision, thus we decline to do so.[8]

Furthermore, upon appeal from a decision of this Court, granted jurisdiction in this case under 15 U.S.C. §1071, the proper venue for appeal would be the Circuit Court of Appeals for the District of Columbia and not the Federal Circuit Court of Appeals. *See Williams v. Dept. of the Army*, 715 F.2d 1485, 1490 (Fed. Cir. 1983). The Federal Circuit Court of Appeals, upon review of the Federal Courts Improvement Act and its legislative history, opined in a footnote to this effect. *Id.* The Federal Circuit Court of Appeals stated that while they may have exclusive

---

[6] The precedents set forth by the United States Court of Customs and Patent Appeals were adopted by the Federal Circuit Court of Appeals in 1982. *See South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982) (adopting the body of law established by the Court of Claims and the Court of Customs and Patent Appeals as precedent.)

[7] The cases Bacardi cite in support of the "logically related" test: *Hercules, Inc. v. National Patent Development Corp.*, 524 F.2d 1227, 187 U.S.P.Q. 668 (CCPA 1975) and *Robbins & Assoc., Inc. v. Questor Corp.*, 599 F.2d 1009, 1012 (CCAP 1979), also fail to provide a legal standard for determining what "logically related" is.

[8] Were this Court to venture down the "logically related" path, we may find that these interlocutory decisions are "logically related" to the issue of fraud, though we decline to do so on the merits.

jurisdiction with respect to appeals from the TTAB under 28 U.S.C. §1295, it is not truly exclusive jurisdiction but merely a grant of jurisdiction to the court if the appellant has such a right. *Id*. The Court acknowledged that an appeal from the TTAB "may, nevertheless, be reviewed alternatively by suit in district court [under 15 U.S.C. 1071(b)] and appeal to a regional circuit." *Id; see CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 673 (7th Cir. 2001) *(*explaining that the courts of appeal, other than the Federal Circuit, have appellate jurisdiction to review the district court's decision (citing *See* 15 U.S.C. § 1121(a)).

Subsequently, this Court has found a number of examples in which a party has appealed a TTAB decision under 15 U.S.C. §1071(b), then, being dissatisfied with the decision of the district court, appealed to the court of appeals in its circuit, which applied the substantive law of the circuit when such precedent existed. *See Kellogg Co. v. Toucan Golf Inc.* 337 F.3d 616 (6th Cir. 2003); *CAE, Inc.*, 267 F.3d at 660*; American Legion v. Matthew*, 144 F.3d 498 (7th Cir. 1998). *See also* 4A. Louis Altman, Callman on Unfair Competition and Monopolies, Trademarks §26:57 (4th Ed. 2006) (explaining that when review is sought of a decision of the Patent and Trademark Office in federal district court as an alternative to an appeal to the Court of Appeals to the Federal Circuit, the laws of the forum apply and there is no reason why the regional courts would be bound by the precedent of the Federal Circuit in a trademark case.) Thus, this Court does not find itself bound by the line of precedent established by the Federal Circuit Court of Appeals, but rather the precedent of the D.C. Circuit.

This Court is aware that the Supreme Court has held that Congress granted jurisdiction to the Federal Circuit over appeals from a district court if the jurisdiction of that court was based on 28 U.S.C. § 1338. *See Mechanical Plastics Corp., v. Titan Technologies, Inc.*, 823 F.Supp.

1137, 1141(S.D.N.Y. 1993) (citing *Christianson v. Colt Indus. Op. Corp.*, 486 U.S. 800, 813-14, 108 S.Ct. 2166, 2176, 100 L.Ed.2d 811 (1988)).  District courts under 28 U.S.C. § 1338, are granted original jurisdiction of any civil actions arising from any Act of Congress relating to "patents, plant variety protection, copyrights, and trademarks."  The United States Court of Appeals for the Federal Circuit was granted exclusive jurisdiction of appeals based, in whole or in part, on 28 U.S.C. 1338 by 28 U.S.C. §1295(a)(1).  However, 28 U.S.C. § 1295 further states that ". . . a claim arising under any Act of Congress relating to . . . trademarks and no other claims under section 1338(a) shall be governed by sections 1291, 1292, and 1294 of this title."  In relevant part, 28 U.S.C. § 1291 states:

> The courts of appeals (other than the United States Court of Appeals for the Federal Circuit*)* shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . .  The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1293 of this title.

28 U.S.C. §1292 and §1293 involve certain types of interlocutory decisions[9] and bankruptcy appeals[10] respectively.  Being that neither party has even mentioned 28 U.S.C. § 1338 in their briefs relating to this matter, this Court believes that its final decision will be reviewable only by the Court of Appeals for the District of Columbia.

### B. The "Merger Doctrine" And The Review Of Denials Of Summary Judgment

Though on appeal from a final decision, this Court may not review the TTAB's denial of Centinela's motion for summary judgment.  The rule that denial of summary judgment is interlocutory has caused some confusion as to the scope of review on appeal from a final

---

[9]  None of the types of interlocutory decisions delineated in 28 U.S.C. §1292(c)(d) are involved in this appeal.

[10] 28 U.S.C. §1293 was repealed by Pub.L. 87-189, §3, Aug.20, 1961, 75 Stat. 417.

judgment. 15B Charles Alan Wright, Federal Practice and Procedure § 3914.28 (2nd Ed. 2006).

Upon appeal, earlier grants of summary judgment which were not appealable at the time they

were issued, merge with the final judgment at the termination of the case and become appealable.

*Yeager v. Drug Enforcement Administration*, 678 F.2d 315 (D.C. Cir. 1982).  However, the same

is not true for denials of motions for summary judgment.  In general, the denial of a motion for

summary judgment is not a reviewable final decision, unless the denial itself has sufficient

indicia of finality.  *See Johnson v. Greater Southeast Community Hospital Corporation*, 951 F.2d

1268 (D.C. Cir. 1991) (citing *McSurely v. McClellan*, 697 F.2d 309, 315 (D.C. Cir. 1982));

*McSurely v. McClellan*, 521 F.2d 1024, 1031 (D.C. Cir. 1975) (footnoting *Brown Shoe Co. v.

United States*, 370 U.S. 294, 308, 82 S.Ct. 1502, 8 L.Ed. 510 (1952).)

The "sufficient indicia of finality" needed to appeal the denial of a motion for summary

judgment, requires that the failure to grant the appeal will lead to rights being "irretrievably lost."

*McSurely*, 521 F.2d at 1031.  In *McSurely*, 521 F.2d at 1032, the defendants claimed that if their

motion for summary judgment were denied, their protections under the Speech and Debate

clause[11] would be irretrievably lost because discovery on issues protected by that clause would be

allowed to proceed.  On this issue, the Court found for the defendants.  *Id.*

One could distinguish *McSurely* from the case at hand on the grounds that the appeal in

*McSurely* was interlocutory and a final judgment had not been issued.  *See* 521 F.2d at 1024.

However, the Court of Appeals for the District of Columbia has adopted this rule, that denial of a

motion for summary judgment is not reviewable, as a general rule.  *Johnson*, 951 F.2d at 1277.

Procedurally, when Johnson appealed the denial of his motion for a partial summary judgment,

[11] U.S. Const. Art. I, s 6, cl. 1.

11

he was also appealing the dismissal of his suit on the grounds of ripeness. *Id.* at 1273. At the time of Johnson's appeal, the lower court had entered a final, dispositive, appealable decision. *Id.* The court in that case, very succinctly, declined to review the district court's denial of summary judgment. *Id.* Thus the effect of this ruling was to remove denials of summary judgment from that which could be reviewed by the court of appeals, absent a "sufficient indicia of finality." *See Id.*

In the present circumstances, this Court does not see what would equate to the "sufficient indica of finality" to justify reviewing the TTAB's denial of Centinela's motion for summary judgment. *See McSurely*, 521 F.2d at 1032. A denial of a motion for summary judgment by the TTAB in this case merely meant that the TTAB found enough facts in dispute as to find that Centinela was not entitled to judgment as a matter of law.[12] This is clearly not a harm on par with the potential harm facing the defendants in *McSurely*, 521 F.2d at 1031. One cannot begin to compare the effect of a denial of summary judgment which denied a party of a claimed right to absolute immunity and hence a right to not be criminally prosecuted, to the denial of summary judgment in this case, which denied Centinela judgment as a matter of law and simply allowed the civil case to proceed. *See Id.*

## CONCLUSION

For the aforementioned reasons this Court concludes that when a final judgment is issued by the TTAB, its interlocutory rulings merge with the final judgment, making the final judgment and the interlocutory orders reviewable on appeal, subject only to the delineated exceptions as to what may ultimately be reviewed. Therefore, this court may review the TTAB's decisions

---

[12] Nothing in Centinela's opposition brief indicated that rights would be irretrievably lost were the Court to not review the TTAB's decision.

denying Centinela's motion to amend, granting Bacardi its motion to join as a party-plaintiff in Opposition, and finding that Bacardi had standing to bring and maintain the opposition. However, because denials of summary judgment may not be reviewed on appeal, this Court will not review the TTAB's denial of Centinela's motion for summary judgment.

     A separate order shall issue this date.


Signed by Royce C. Lamberth, United States District Judge, March 29, 2007.